RENDERED:  MAY 23, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1426-MR

JASON BAGGETT                                          APPELLANT

APPEAL FROM FULTON CIRCUIT COURT
v.        HONORABLE TIMOTHY A. LANGFORD, JUDGE
ACTION NO. 21-CR-00040

COMMONWEALTH OF KENTUCKY                               APPELLEE

AND

NO. 2022-CA-1427-MR

JASON BAGGETT                                          APPELLANT

APPEAL FROM FULTON CIRCUIT COURT
v.        HONORABLE TIMOTHY A. LANGFORD, JUDGE
ACTION NO. 21-CR-00051

COMMONWEALTH OF KENTUCKY                               APPELLEE

AND

NO. 2022-CA-1428-MR

JASON BAGGETT                                                        APPELLANT

                      APPEAL FROM FULTON CIRCUIT COURT
v.                 HONORABLE TIMOTHY A. LANGFORD, JUDGE
                           ACTION NO. 21-CR-00063

COMMONWEALTH OF KENTUCKY                                              APPELLEE

OPINION
AFFIRMING IN PART, REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND McNEILL, JUDGES.

CALDWELL, JUDGE:  The Appellant, Jason Baggett ("Baggett"), appeals from

the judgment of the Fulton Circuit Court convicting him of Assault in the Second

Degree, Burglary in the First Degree, Criminal Mischief in the First Degree,

Criminal Mischief in the Third Degree, and Terroristic Threatening in the Third

Degree upon an *Alford* plea.[1]  He was sentenced to eight years' imprisonment.

Baggett appeals to this Court as a matter of right.

---

[1] *See generally North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

On appeal, Baggett asserts that his convictions violate the prohibition against double jeopardy, requiring reversal of his conviction for third-degree criminal mischief, the lesser conviction. He additionally argues his *Alford* plea as to the remaining charges was involuntary and should be vacated. Baggett further asserts a due process violation in being ordered to pay restitution without a hearing occurring on the matter.

The Commonwealth concedes Baggett is entitled to reversal of the third-degree criminal mischief conviction and the restitution order. We reverse Baggett's conviction for Criminal Mischief in the Third Degree and the restitution order with directions to enter a new judgment accordingly. Finding no error otherwise in the Fulton Circuit Court's determination that Baggett's *Alford* plea was voluntary, we affirm as to the remaining convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

Baggett was indicted by a Fulton County Grand Jury on May 27, 2021, for charges of Terroristic Threatening in the Third Degree, Criminal Mischief in the First Degree, and being a Persistent Felony Offender ("PFO") in the First Degree. The indictment related to an incident alleged to have occurred on March 26, 2021, at the residence of Baggett's sister, Casey Pirtle ("Pirtle"), and her boyfriend, Ozell Donald ("Donald"), who were both identified as victims in the Terroristic Threatening count. The Criminal Mischief count charged Baggett with

damaging property owned by Robert Voegeli, Pirtle and Donald's landlord. These charges were assigned Fulton County Circuit Court case number 21-CR-00040. A warrant for Baggett's arrest issued but it appears he was not apprehended during a two-week period following his indictment.

On June 10, 2021, officers from Fulton Police Department ("FPD") responded to a 911 call from Pirtle and Donald's residence reporting that Shannon Moore ("Moore"), Baggett's girlfriend, needed medical attention. A responding FPD officer documented in an incident report:

> Pirtle stated that her boyfriend Ozell Donald brought Moore to their residence on Reed St hoping Baggett would leave the residence but instead [*sic*] assaulted Moore. Pirtle stated Baggett and Moore began arguing and it became physical. Pirtle attempted to break up the fight but was shoved to the ground by Baggett. Pirtle stated she'd witness [*sic*] Baggett uppercut Moore in the face and knocking her several feet in the opposite direction. Pirtle stated the blood began to pour from Moore's mouth and Moore was pleading to Baggett to stop and let her go home. Pirtle stated that Baggett calmed down and left when she called 911 for Moore. I was contacted by my dispatch, advising me that Moore was transported to Memphis Regional One Hospital for emergency surgery. I spoke with a nurse in the trauma unit who advised me Moore suffered a mandibular fracture[.]

The incident report indicated Pirtle was going to the Fulton Police Department ("FPD") to take out a complaint against Baggett. A sworn complaint Pirtle filed stated:

-4-

The Affiant, Casey Pirtle states that on 6/9/2021 at 8:00pm in FULTON County, Kentucky, the above named defendant unlawfully: On 6/10/21 Casey Pirtle walked into the Fulton Police Dept to report that her brother Jason Baggett who is [sic] trespassed from her residence at 211 Reed St. busted her front window pain [sic] and gained entry into her residence by kicking the front door off the door frame and held a serrated knife to her throat and threatened to kill her and her boyfriend Ozell Donald. Pirtle stated that Baggett stated he was tired of sleeping on the streets and needed a place to go. Pirtle stated that Baggett barricaded the door with a chair and would not let her or Donald leave the residence. Donald and Pirtle was [sic] able to calm Baggett down and was [sic] able to leave after several minutes held against their will.

Baggett turned himself in to FPD on June 11, 2021. He was charged in Fulton District Court, for assault against Moore in a case assigned number 21-F-00068. Additionally, charges of burglary, terroristic threatening, and criminal mischief, from Pirtle's sworn complaint, were assigned case number 21-F-00069. Baggett was arraigned in Fulton District Court for these charges on June 15, 2021. The record indicates the two cases, which both appear related to June, 2021 incidents, were consolidated and a probable cause hearing was held on June 22, 2021. This hearing is not part of the record before us. From the record we have it appears that, after finding probable cause, the district court referred the cases to the grand jury.

On June 24, 2021, Baggett was arraigned in Fulton Circuit Court for case 21-CR-00040, an indictment based on the March 26, 2021, incident. The Department of Public Advocacy ("DPA") was appointed to represent him.

On July 8, 2021, Baggett was indicted by the Fulton County Grand Jury on charges of Assault in the Second Degree and PFO in the First Degree. Moore was named as the victim in the indictment and the date of the assault was June 10, 2021. The case was assigned number 21-CR-00051. Baggett was arraigned on this case in Fulton Circuit Court on July 22, 2021. The DPA was appointed to represent Baggett and the case was consolidated with 21-CR-00040 on the Fulton Circuit docket.

On July 23, 2021, Baggett's attorney filed a motion to determine competency. The trial court subsequently entered an order for a Kentucky Correctional Psychiatric Center ("KCPC") evaluation. Incidental to KCPC delays and issues related to COVID-19, Baggett's evaluation did not occur until February 8, 2022, and no report concerning his evaluation was filed until February 23, 2022.

On September 9, 2021, Baggett was again indicted by the Fulton Grand Jury in a case assigned number 21-CR-00063. This indictment charged Burglary in the First Degree, Terroristic Threatening in the Third Degree, Criminal Mischief in the First Degree, and PFO. The date of the underlying incident was listed in the indictment as March 26, 2021, the same date as had been in the

indictment for 21-CR-00040. The new indictment, unlike that for 21-CR-00040, charged Baggett had committed Burglary "by knowingly and unlawfully entering a residence, owned by Robert Voegeli, but being rented by Ozell Donald and Casey Pirtle, with the intent to commit a crime therein, against the peace and dignity of the Commonwealth." The Terroristic Threatening count identified Pirtle and Donald as the victims and likewise read identically to the count in the indictment in case 21-CR-00040. The Criminal Mischief count in 21-CR-00063 charged Baggett had caused damage "to *a residence* belonging to Robert Voegeli" while the count in 21-CR-00040 had alleged he'd caused damage "to *property* belonging to Robert Voegeli." (Emphasis added.) However, the language for this count in the two indictments was otherwise identical.

Baggett's arraignment for 21-CR-00063 in Fulton Circuit Court occurred the same day he was indicted. At that time, regarding the new indictment, the prosecutor told the trial judge, "[w]e had already indicted him on several of these charges, we just added a burglary charge to that." The trial judge specifically inquired of the Commonwealth if this was a superseding indict to which the prosecutor affirmed, "It is, sir." The judge conveyed same to Baggett, who appeared by video conference from the jail, telling him he had been re-indicted with a superseding indictment.

-7-

No dismissal of the charges in 21-CR-00040 by the Commonwealth occurred. Pretrial conferences followed but no matters of substance were addressed because of the pendency of the motion to determine competency. We locate no discussion of why both 21-CR-00040 and 21-CR-00063 proceeded without amendment on the record before us.

A competency hearing was held on March 23, 2022. Clinical psychologist Dr. Robert Sivley testified as the only witness. His testimony concerned his evaluation of Baggett conducted pursuant to the trial court's order. Dr. Sivley ultimately concluded Baggett was competent but that his competency may be dependent on continuing to take his prescribed medication.

Dr. Sivley indicated Baggett's criminal behavior was likely related to substance-induced psychosis from daily methamphetamine use and sleep deprivation during a ten-month period that began upon Baggett's release from prison in 2020 and continued until his arrest for the underlying cases. Baggett reported psychotic symptoms, including auditory hallucinations, had occurred during his methamphetamine use but this did not occur when he was not using drugs.

Dr. Sivley testified that he had determined Baggett to be in the mildly intellectually impaired range of cognitive abilities with an overall composite IQ score of 62. Dr. Sivley found no intellectual disability or mental illness prevented

Baggett from comprehending his current charges or basic legal issues. Baggett had a component score of 70 on the verbal portion of the test and 57 on the non-verbal portion. Dr. Sivley found it significant that Baggett's "strength is in verbal skills which is the nature of legal knowledge." He determined Baggett had a good understanding of the current charges, roles of those involved in the litigation process, and the nature and consequences of the proceeding. Baggett was, Dr. Sivley testified, capable of substantively assisting his counsel.

Dr. Sivley did express an opinion that Baggett's mental state might be subject to decline. However, so long as Baggett was taking his prescribed psychotropic medication, he believed he would remain competent to stand trial. Dr. Sivley acknowledged Baggett had a significant psychiatric history and acknowledged a possibility Baggett suffers from bipolar disorder.

At the hearing's conclusion, arguments from counsel were heard. The trial court found Baggett competent to stand trial.

The day before a scheduled jury trial, Baggett entered *Alford* pleas in all three cases. The plea agreement forms entered at this time show the Commonwealth's offers of one (1) year, in case 21-CR-00040, for Baggett's plea to Criminal Mischief in the First Degree, and two (2) years in case 21-CR-00063 for a plea to a reduced charge of Burglary in the Third Degree, 45 days on the Terroristic Threatening charge, as well as 45 days on a reduced charge of Criminal

Mischief in the Third Degree. Additionally, the Commonwealth offer for a plea in 21-CR-00051 was for five (5) years on a reduced charge of Assault under Extreme Emotional Distress. The plea agreement forms list all initial and amended charges in 21-CR-00051 and 21-CR-00063. However, in 21-CR-00040, only Criminal Mischief in the First Degree is listed and the original charges of Terroristic Threatening and PFO do not appear, although the final judgment and dismissal orders show those charges were dismissed.

No recitations of fact were included in the plea agreements or change of plea forms that differentiated the criminal mischief charges in any way. The Judgment and Sentence on a Plea of Guilty in 21-CR-00040 indicated Baggett "entered a plea of GUILTY to . . . Criminal Mischief, 1st degree . . . committed on or about March 26, 2021[.]" The Judgment and Sentence on a Plea of Guilty entered by the trial court in 21-CR-00063 indicated Baggett "entered a plea of GUILTY to Criminal Mischief, 3rd degree . . . committed on or about March 26, 2021[.]"

At the sentencing hearing, the trial court ordered the sentences to run consecutively for a total of eight years. The Commonwealth requested the trial court order restitution. Upon the trial court's inquiry, Baggett indicated he requested a hearing on restitution. The trial court then set restitution in the Judgment and Sentence on a Plea of Guilty in 21-CR-00040 ordering Baggett to

-10-

pay: "Robert Voegeli 1,896.96 subject to hearing to be set within 25 days."

Baggett was advised by the trial court that if no hearing date were set, he would not be required to pay the restitution.

Baggett now appeals the judgments in all three cases.

## ANALYSIS

Baggett alleges his convictions for the two counts of Criminal Mischief constitute a violation of his double jeopardy rights under KRS 505.020(1)(b). Baggett requests the conviction and sentence for Criminal Mischief in the Third Degree in 21-CR-00063 be vacated. "The remedy for this type of statutory double jeopardy violation is to vacate the lesser conviction, and only allow sentencing on the greater conviction." *Taylor v. Commonwealth*, 611 S.W.3d 730, 739-40 (Ky. 2020). Regarding this claim, the Commonwealth concedes in its response brief that "[u]nder these unique circumstances, Baggett's complaint is well-taken. The Commonwealth does not contest the claim raised by Baggett or the relief requested."

Baggett additionally alleges his due process rights were violated when the restitution order was entered without any hearing occurring, citing to *Jones v. Commonwealth*, 382 S.W.3d 22, 31-32 (Ky. 2011). On this claim, the Commonwealth concedes that no hearing on the restitution order occurred "and it

-11-

appears that it's too late to go back and fix things. Accordingly, his request for relief should be granted."

This leaves Baggett's *Alford* pleas to the remaining charges. Baggett argues that the trial court erred in accepting his *Alford* plea as it was involuntary. Baggett acknowledges he never presented any arguments on this issue to the trial court through a motion to withdraw, or otherwise. So, the issue is not preserved. Nonetheless, Baggett asserts the issue is reviewable because of constitutional implications, citing to *Boykin v. Alabama*, 395 U.S. 238, 244, 89 S. Ct. 1709, 1713, 23 L. Ed. 2d 274 (1969).

The Commonwealth argues Baggett waived any claims that his pleas were involuntary through his failure to file a motion to withdraw the plea before entry of final judgment. The Commonwealth cites to *Shannon v. Commonwealth* in support. 562 S.W.2d 301 (Ky. 1978), *overruled by Wellman v. Commonwealth*, 694 S.W.2d 696 (Ky. 1985). The *Shannon* Court held that although imposition of consecutive life sentences was a statutory violation, failure to preserve the issue with an objection in the trial court barred appellate review. 562 S.W.2d at 302. The Commonwealth acknowledges *Shannon* was overruled in 1985 by *Wellman*, but argues it was overruled on grounds not applicable here. We disagree.

The *Wellman* Court unmistakably found that a statutory violation in sentencing *was* subject to review even without an objection to the trial court. 694

S.W.2d at 698. "We expressly overrule *Shannon v. Commonwealth*, Ky., 562 S.W.2d 301 (1978), on this point and hold that, despite the fact that the trial counsel failed to object at the time of the judgment's entry, since sentencing is jurisdictional it cannot be waived by failure to object." *Id.* Baggett's claim, however, does not turn on a statutory violation. Instead, his arguments consistently turn on allegations the circuit court erred in conducting its *Boykin* colloquy and in relying on same in accepting Baggett's *Alford* plea at the conclusion of the colloquy. A court's failure to comply with the requirements of *Boykin* is a matter that, like statutory violations in sentencing, will survive a waiver. *See Grigsby v. Commonwealth*, 302 S.W.3d 52, 54-55 (Ky. 2010) (citing *Wellman*, 694 S.W.2d at 698). Stated another way by our Supreme Court:

> While an unconditional guilty plea waives the right to appeal many constitutional protections . . . there are some remaining issues that can be raised in an appeal. These include . . . whether the plea complied with the requirements of *Boykin v. Alabama*[.]

*Windsor v. Commonwealth*, 250 S.W.3d 306, 307 (Ky. 2008).

We find Baggett's allegations that the trial court committed reversible error during the course of the *Boykin* colloquy are reviewable despite the lack of preservation.

## STANDARD OF REVIEW

A trial court's determination of whether a plea was voluntarily entered is reviewed under the clearly erroneous standard. *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288 (Ky. 2004); *see also Commonwealth v. Patton*, 539 S.W.3d 651, 653 (Ky. 2018). The determination of whether a plea was voluntarily entered requires "[e]valuating the totality of the circumstances surrounding the guilty plea [which] is an inherently factual inquiry[,]" *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001). "Whether a guilty plea is voluntarily given is to be determined from the totality of the circumstances surrounding it. The trial court is in the best position to determine the totality of the circumstances surrounding a guilty plea." *Ridgon*, 144 S.W.3d at 288-89 (footnotes omitted).

### Based On The Totality Of Circumstances, We Detect No Clear Error In The Trial Court's Acceptance of Baggett's *Alford* Pleas.

Baggett argues his *Alford* plea should not have been accepted by the trial court, as it was involuntary and his convictions for all charges should be vacated in his view. In support, he alleges multiple errors occurred during the trial court's *Boykin* colloquy that, under the totality of the circumstances, reveal his plea could not have been voluntary.

"An *Alford* plea is a 'plea of guilty,' regardless of any denial of underlying facts, and clearly constitutes a criminal conviction." *Pettiway v. Commonwealth*, 860 S.W.2d 766, 767 (Ky. 1993). Before accepting a criminal

-14-

defendant's guilty plea, a trial court must determine the plea is made voluntarily and with an understanding of the nature of the charges. RCr[2] 8.08. A hearing on the record is required for the trial court to verify a defendant's plea is knowing and voluntary, with the defendant aware of the consequences of a guilty plea, including the constitutional rights being waived. *Boykin*, 395 U.S. at 241-42, 89 S. Ct at 1711. Stated differently, "[a] plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Henderson v. Morgan*, 426 U.S. 637, 645 n.13, 96 S. Ct. 2253, 2257 n.13, 49 L. Ed. 2d 108 (1976) (citations omitted).

Turning to Baggett's specific allegations of error, he first alleges the trial court erred by failing to ask whether he understood the waiver of his rights against self-incrimination and to an appeal from the merits of the case. During the colloquy, the trial judge asked Baggett whether he knew he was waiving his right to a trial several times and rephrased the inquiry in varied and easy to understand language. The trial court specifically inquired whether Baggett understood he was waiving his right to a jury trial where his counsel would have an opportunity to question witnesses on his behalf. Baggett was asked whether he understood that he

---

[2] Kentucky Rules of Criminal Procedure.

was giving up certain constitutional rights by entering an *Alford* plea. However, at no point during the *Boykin* colloquy was there any specific discussion of the plea's effect of waiving Baggett's right against self-incrimination or to appeal.

The motions to enter a guilty plea signed by Baggett and certified by his attorney in each of the three cases all indicated:

> I understand that I may plead "NOT GUILTY" to any charge against me, in which event the Constitution would guarantee me the . . . right not to testify against myself . . . and . . . [t]he right to appeal my case to a higher court.

Our Supreme Court has determined that "*Boykin v. Alabama* does not require a separate enumeration of rights waived and separate waivers as to each." *Johnson v. Commonwealth*, 103 S.W.3d 687, 691 (Ky. 2003) (citations omitted). "Rather, as long as a defendant has a full understanding of what the plea connotes and its consequences, it is valid." *Grigsby*, 302 S.W.3d at 56 (internal quotation marks and citations omitted). Under these circumstances, we cannot say the trial court's failure to separately inquire as to Baggett's waiver of the right against self-incrimination and the right to appeal rendered his plea involuntary.

Next, Baggett alleges the trial court erred by failing to ask him, his attorney, or the jailer whether had he been taking his prescribed medication. Baggett alleges comments he made in response to the trial court's inquiries were inappropriate and should have prompted the inquiry. These include, when asked

-16-

by the trial court whether he'd been subject to any threats which prompted him to accept the plea agreement, Baggett replying, "No sir. I'm just getting old." At another point, when asked if he was under the influence of intoxicants, Baggett's reply was that "I might be a little sore."

After reviewing Baggett's behavior on the video record of the hearing, as well as in all other hearings on the record before us, we cannot say the trial court clearly erred in making no inquiry as to Baggett's medication. Baggett alleges his own comments demonstrate a lack of competence by his "talking about things not related to the questions" during the *Boykin* colloquy. The comments in question appear to be Baggett's attempts to make jokes which are perhaps awkward but would not clearly cast doubts on his competency. At each point Baggett offered such a response, the trial court rephrased or clarified the matter of inquiry. Baggett's subsequent responses at each venture indicate he comprehended the subject matter of the trial court's inquiry based on our review.

Baggett cites to Dr. Sivley's testimony indicating Baggett's competence might depend on his continuing to take psychotropic medications. The record shows Dr. Sivley indicated the flow and content of thought by Baggett were within normal limits during his examination. It appears Baggett had returned to his regimen of medication upon being detained at the Fulton County Detention Center ("FCDC") for pretrial detention on the underlying charges. Dr. Sivley

reported the ten-month period before Baggett's arrest was the period in which Baggett had failed to take his medication. Baggett had resumed his medication for some time prior to his evaluation. He remained incarcerated at the Fulton County Detention Center in the period between his evaluation by Dr. Sivley and the trial court's *Boykin* colloquy. Baggett's demeanor during his plea appears consistent with other appearances before the trial court following his competency hearing. This is in contrast to his erratic and agitated demeanor during his initial appearances shortly after his arrest, based on the record before us.

Baggett makes no challenge to the determination he was competent to stand trial. "[T]here is no heightened standard of competency required in order to enter a guilty plea . . . than that generally required of a defendant to stand trial." *Chapman v. Commonwealth*, 265 S.W.3d 156, 174-75 (Ky. 2007). Furthermore, Baggett cites to no legal authority for his proposition the trial court was required to inquire as to whether Baggett had been taking his medications as directed. "The trial court is in the best position to determine the totality of the circumstances surrounding a guilty plea." *Rigdon*, 144 S.W.3d at 288-89. We cannot say the trial court should have concluded Baggett's behavior indicated a lack of understanding of the proceeding or implications of his plea.

Baggett next alleges the trial court erred by failing to inquire about the factual basis of the cases from Baggett to ensure he understood the nature of the

-18-

charges to which he was pleading guilty. "[A] trial court can satisfy itself that there is a factual basis for a guilty plea in any number of ways . . . a factual basis is satisfied in cases that do not involve unduly complicated crimes if a summary of the charges is read to the defendant and the defendant admits to having committed the offense." *Chapman*, 265 S.W.3d at 183. The charges read during the course of the hearing related to Baggett assaulting his girlfriend, threatening his sister and her boyfriend, and burglarizing and damaging their apartment owned by Voegeli. The trial court informed Baggett, at one point, that he was not required to allocute to the facts by entering *Alford* pleas. Nonetheless, during the course of the hearing, Baggett mentioned he and his sister argued "quite a bit" in reference to his charges. There was some mention of Baggett's sister and girlfriend being victims in the cases and Baggett mentioned owing Voegeli money because of damaging a door. These statements appear to reflect Baggett's understanding of the factual basis underlying the charges.

Certainly, some on-the-record review of the facts supporting Baggett's charges by the trial court would have been preferable for reasons self-evident in the circumstances of this appeal. Nevertheless, we cannot say the trial court committed reversible error by failing to specifically inquire from Baggett the factual basis of the charges to which he requested to enter an *Alford* plea.

-19-

Moreover, the record reflects that Baggett made statements reflecting a basic understanding of the factual nature of the charges.

Baggett additionally alleges error in the trial court by its failure to inquire of defense counsel whether he had fully advised Baggett of his rights, defenses, and the underlying facts of the charges. And further, whether counsel believed Baggett understood them and was entering into the plea agreement knowingly, intelligently, and voluntarily.

Baggett was accompanied by counsel at all points during the plea hearing and had been represented by counsel throughout the extensive period between his initial arraignment and the entry of his *Alford* pleas. In each of the motions to enter a guilty plea, Baggett's attorney signed a Certificate of Counsel that stated:

> To the best of my knowledge and belief, the defendant understands the allegations contained in the indictment and/or any amendments thereto. I have fully discussed with the defendant the charges and any possible defenses to them and I believe he/she fully understands the charges and possible defenses. I have reviewed with the defendant the attached "Commonwealth's Offer on a Plea of Guilty" and the forgoing "Motion to Enter a Plea of Guilty," and I believe he/she understands these documents.
>
> . . . To the best of my knowledge and belief, his/her plea of "GUILTY" is made freely, knowingly intelligently and voluntarily. I have fully explained the defendant's constitutional rights to him/her and I believe that he/she understands them.

. . . The plea of "GUILTY" as offered by the defendant is consistent with my advice to him/her, and I recommend to the Court that his/her plea be accepted.

The motions indicated the Certificate of Counsel was "[s]igned . . . in open court in the presence of the defendant" on the date of the signature. However, both Baggett and his counsel had signed these three weeks prior to the actual entry of the pleas.

Baggett points out our Supreme Court has declared, "the better practice for all concerned in future cases is for the trial court to take the time to ask counsel questions about the plea and the documents filed in conjunction therewith." *Zapata v. Commonwealth*, 676 S.W.3d 390, 396 (Ky. 2020). However, in *Zapata* there was not simply an absence of a specific inquiry of counsel during the *Boykin* colloquy, the defense attorney had deliberately withheld her signature from the certificate of counsel on plea documents. 676 S.W.3d at 396. This was because of counsel's concerns about the defendant's competency. Nevertheless, the *Zapata* court found that, "the trial court did not ask counsel questions about the certificate of counsel" but this "did not, in and of itself, render this plea invalid" and ultimately affirmed the trial court's finding the defendant's *Alford* plea was not involuntary. *Id.* The Zapata court found counsel's signature "would have been evidence of the voluntariness of the plea[.]" Defense counsel's

-21-

endorsement of the Certificate of Counsel serves to "provide . . . defense counsel's] opinion that [the defendant voluntarily entered his plea[.]" *Id.*

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). Baggett was asked on multiple occasions whether he had reviewed the plea agreements with his attorney and whether he needed any more time to speak with his attorney. He expressed being satisfied with the services of his attorney when inquired. Baggett makes no arguments otherwise regarding his counsel's advice on this appeal. A better practice would have been for the trial court to have made specific inquiry of counsel regarding his signature. However, we cannot say under these circumstances this rendered the plea involuntary.

Baggett's final argument his plea was involuntary and invalid under *Boykin* is that "he could not have understood the offenses or would not have twice pled guilty to a double jeopardy violation." During this plea colloquy, the trial court reviewed each of Baggett's charges and the corresponding sentencing recommendations. However, as Baggett points out, the plea offer incorrectly indicates Criminal Mischief in the First Degree as the only initial count of the indictment in 21-CR-00040. The original charges of Terroristic Threatening and PFO in the First Degree Baggett was indicted for in 21-CR-00040 are not listed in

-22-

the plea offer, although the final judgment and dismissal order show those charges were dismissed.

The procedural history of the Fulton District Court cases 21-F-00068 & 21-F-00069, contained in the record before us for case 21-CR-00051, is not specifically referenced by either party. Baggett's statement of the case describes that, "on June 10, 2021. . . ."

> Pirtle told responding officers that Jason had punched Moore in the face. . . . Pirtle also went to the Fulton Police Department to take out a complaint against Jason. . . . The complaint Pirtle filed accused Jason of breaking into her residence and threatening her and Donald.

As quoted above, Pirtle's accusation in her sworn complaint was that Baggett had broken into her and Donald's apartment and threatened them on either that same day or the day prior, June 9, 2021. Although he had not been apprehended, Baggett was already under indictment for 21-CR-00040 at this time, which related to a March 26, 2021, incident at Pirtle's residence. No report of an investigating officer or other discovery material regarding this March 26, 2021, incident is contained in the record before us. However, Dr. Sivley's report mentions his review of discovery material and an incident report related to 21-CR-00040. His description of contents from the discovery material and incident report references factual allegations distinct from those in Pirtle's affidavit (which ostensibly concerned an incident on June 9 or 10, 2021).

-23-

It is troubling that the record is unclear. The record does contain evidence regarding allegations of separate incidents on different dates involving Baggett threatening Pirtle and Donald at their residence and causing damage to it. At times, the procedural history suggests one or more participants, during the course of this case, could have operated under an understanding Baggett was being prosecuted for two separate incidents in 21-CR-00040 and 21-CR-00063 – one on March 26, 2021, and the other on June 9 or 10, 2021.

Nonetheless, on the record before us, it is unambiguous that Baggett was indicted, in 21-CR-00040 and 21-CR-00063, for an offense said to have occurred on or about March 26, 2021. The final judgments for 21-CR-00040 and 21-CR-00063 likewise indicate the offenses all occurred on March 26, 2021. The Commonwealth concedes a double jeopardy violation and indicates failure to dismiss 21-CR-00040 was through inadvertence. In his reply brief, Baggett alludes to the possibility of multiple incidents and asserts "[t]he record is unclear as to whether the terroristic threatening was also a double jeopardy violation."

The only charge which is duplicative on the face of the final judgments and the only double jeopardy violation Baggett unambiguously asserts is that for the Criminal Mischief counts. The Commonwealth concedes to this and to the relief Baggett requested. The lesser count of Criminal Mischief being vacated makes no difference as to Baggett's sentence.

-24-

In his reply, Baggett "reasserts his contention the trial court's failure to inquire about the factual basis of the charges led [Baggett] to be twice penalized for a single offense." However, the trial court played no role in the negotiation or terms of Baggett's plea bargain or sentencing recommendations. We cannot say a trial court's failure to detect facially duplicative charges (amounting to a double jeopardy violation), among other charges in a defendant's *Alford* pleas, renders the nonduplicative pleas involuntary.

The trial court made no misrepresentations to Baggett as to the implications of his pleas. "A guilty plea is involuntary if the defendant lacked full awareness of the direct consequences of the plea or relied on a misrepresentation by the Commonwealth or the trial court." *Edmonds vs. Commonwealth*, 189 S.W.3d 558, 566 (Ky. 2006) (citations omitted).

The trial court adequately conveyed to Baggett the nature of his charges, confirmed his satisfaction with the advice of his attorney, and appropriately found his plea knowing, voluntary and intelligent. "A guilty plea is intelligent if a defendant is advised by competent counsel regarding the consequences of entering a guilty plea . . . , is informed of the nature of the charge against him, and is competent at the time the plea is entered." *Id*. at 566.

**CONCLUSION**

Baggett's conviction for Criminal Mischief in the Third Degree in 21-CR-00063 and the order of restitution in 21-CR-00040 are hereby reversed with directions to enter a new judgment which does not convict Baggett of third-degree criminal mischief and which does not order him to pay restitution. Otherwise, the judgments of the Fulton Circuit Court in 21-CR-00040, 21-CR-00051, and 21-CR-00063 are affirmed.

McNEILL, JUDGE, CONCURS.

ECKERLE, JUDGE, CONCURS IN PART IN RESULT ONLY AND FILES SEPARATE OPINION.

ECKERLE, JUDGE, CONCURRING IN PART IN RESULT ONLY: I agree with the majority's conclusion to reverse one third-degree criminal mischief conviction and the restitution order. Both Baggett and the Commonwealth agree to this result. The dual criminal convictions for that charge violated the Constitution, and the lesser conviction must be vacated. And the Trial Court impermissibly issued a restitution order without honoring Baggett's right to be heard on the issue, and that ruling cannot stand.

And I agree with the majority's ultimate conclusion that Baggett's other criminal convictions should be affirmed. However, I reach that decision upon wholly different grounds, and I disagree with the majority's analysis. I would hold that Baggett waived his right to contest – for the first time and only upon

appeal – the voluntariness of his plea based upon his purported incompetence. I believe that Kentucky case law requires him to petition the Trial Court first, either by motion to withdraw his plea or by attacking the Trial Court's finding of competence. He chose to take neither of those actions before the Trial Court. He has thereby waived his right to complain on appeal of a lack of voluntariness. And I think it is unwise to give quarter now to this novel request at the appellate level.

At Baggett's request by motion almost four years ago, on July 23, 2021, the Trial Court ordered a competency evaluation. Eight months later, on March 23, 2022, the Trial Court conducted a competency hearing, consisting solely of the testimony of a clinical psychologist about Baggett's substance-induced psychosis due to his use of methamphetamine. Dr. Sivley opined that Baggett's mild mental impairment began in the year 2020, after his release from prison, and Baggett's deficits did not amount to any mental illness or disability that would operate to impair his comprehension of his current charges, legal issues, or the nature and consequences of the proceedings against him; and his deficiencies would not impede his ability to aid his counsel in his defense. Indeed, Dr. Sivley found Baggett had strengths in verbal skills and a good understanding of all the legal issues. Baggett did not present any witnesses or proof at the hearing of his incompetence or other inabilities. After listening to arguments from counsel, the Trial Court found Baggett competent to stand trial.

In the years that have transpired since, Baggett has not further litigated the finding of competence. Significantly, Baggett did not make a post-hearing challenge of the finding of competence at the trial level in any way whatsoever.

Instead, he and the Commonwealth proceeded towards a jury trial. But the day before it was to begin, Baggett pleaded guilty. In doing so, he explicitly admitted that his pleas were knowing, voluntary, and intelligent. Once again, he raised no issue as to the Trial Court's prior finding of competence. Importantly, he never sought to set aside those pleas for lack of voluntariness before the Trial Court. In other words, he did not move to withdraw his plea.

Now, for the first time on appeal, and after a significant expiration of time, he asserts that the Trial Court should not have accepted his plea because it was involuntary due to an alleged incompetence. In essence, he is attacking the Trial Court's finding of competence, but he is not appealing on that ground explicitly. Likewise, he has not raised any issues with his counsel's advice as to his plea or his competence, such as pursuant to an RCr 11.42 motion. He has also not filed a separate CR 60.02 motion seeking extraordinary relief.

Judicial findings of competence, and of incompetence, are not permanent decrees. One's particular mental deficits can cause legal competence to wax and wane, particularly over the course of several years. *Jacobs v.*

*Commonwealth*, 58 S.W.3d 435 (Ky. 2001). Baggett could have requested a second competency evaluation. He also could have requested his own expert. He did not. He even concedes that he did not seek relief before the Trial Court on his new claims. Likewise, he provides no "reasonable grounds" for the Trial Court to believe that Baggett's competence had changed and thus to issue an order *sua sponte* for another evaluation. KRS 504.100(1). Thus, he did not preserve these arguments for review, and he has waived the right to appeal them now.

The majority finds that Baggett's claims are reviewable here. I cannot agree.

In *Shannon v. Commonwealth*, 562 S.W.2d 301 (Ky. 1978), *overruled by Wellman v. Commonwealth*, 694 S.W.2d 696 (Ky. 1985), appellant argued for the first time on appeal that his guilty plea was invalid because it was not entered knowingly, intelligently, and voluntarily. *Id.* at 302. The Supreme Court held that absent justification for failing to make the argument at the Trial Court level, it comes too late for appellate review. *Id.* (citing *Dalton v. Commonwealth*, 478 S.W.2d 734, 302 (Ky. 1972)).

The *Wellman* Court overruled *Shannon* on the unrelated grounds of illegal sentences. In *Wellman*, a jury had found appellant guilty of murder and being a persistent felony offender. 694 S.W.2d at 697. The final judgment incorrectly sentenced the appellant to life imprisonment for each charge, a direct

contravention of KRS 532.080(1), which provides that the sentence for persistent felony offender shall be *in lieu* of the sentence imposed for the principal offense. The appellant raised this sentencing error for the first time on appeal. The Supreme Court overruled *Shannon* on the point that an appellant waives review of final judgment for an illegal sentence by failing to seek relief before the Trial Court because "sentencing is jurisdictional[,]" and thus it cannot be waived. *Id.* at 698. The Court there affirmed the conviction but remanded to the trial court to comply with the relevant sentencing statute. *Id.*

Even more recently, the Supreme Court clarified that *Wellman*'s phrase "sentencing is jurisdictional" is "a reference to the appellate court's inherent jurisdiction to correct an illegal sentence." *Hayes v. Commonwealth*, 627 S.W.3d 857, 862 (Ky. 2021) (citing *Jones v. Commonwealth*, 382 S.W.3d 22, 26-27 (Ky. 2011)). As such, *Wellman* and subsequent authority stand for the proposition that an appellate court may review unpreserved issues concerning sentencing that is "contrary to statute, such as when an imposed sentence is longer than allowed by statute for the crime, or a claim that the decision was made without fully considering the statutorily-allowed sentencing options." *Hayes*, 627 S.W.3d at 862.

The analysis in *Wellman* is not on point here. Baggett does not allege a sentencing error or illegality. Rather, he attacks the very essence of his plea and

ability to be guilty legally. *Wellman* did not rule upon the guilt phase of the proceedings.

Based on the aforenoted case law, *Shannon* still precludes our review. *See also Russell v. Commonwealth*, 495 S.W.3d 680 (Ky. 2016) (declining review of voluntariness of plea where appellant failed to motion the trial court for withdrawal of his plea). Thus, we should affirm Baggett's convictions, except as mentioned regarding the third-degree criminal mischief charge, because he has waived review. We need not engage in a detailed analysis of the reasons that we believe Baggett's plea was knowing and voluntary, as the majority has done.

Nonetheless, I acknowledge that our Supreme Court has stated that unpreserved claims that a plea did not comply with *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 230 L. Ed. 2d 274 (1969), such as a plea not being made voluntarily, can survive waiver. *Windsor v. Commonwealth*, 250 S.W.3d 306, 307 (Ky. 2008). However, that case is also distinguishable here. In *Windsor*, the Commonwealth's high Court held that while an unconditional plea waives the right to appeal, an unconditional plea to two counts of capital murder that resulted in a death sentence was nonetheless reviewable as to competence and the adequacy of the *Boykin* colloquy under the circumstances of that case. *Id.* at 306-07. Importantly, in *Windsor*, competence was not at issue, and no competency hearing or motion was mentioned. Further, that defendant entered a guilty plea contrary to

the advice of his counsel. *Id.* at 306. That circumstance is not present here. Finally, the *Windsor* Court did not proceed to review the voluntariness of the plea and the adequacy of the *Boykin* discussion. Rather, it sent the case back to the trial court there to issue an amendment to indicate that its judgment was appealable. *Id.* at 307.

Here, the majority proceeds to analyze the plea colloquy and voluntariness without any prior Trial Court review or ruling on these matters. "Whether a guilty plea is voluntarily given is to be determined from the totality of the circumstances surrounding it. The trial court is in the best position to determine the totality of the circumstances surrounding a guilty plea." *Rigdon v. Commonwealth*, 144 S.W.3d 283, 288-89 (Ky. 2004). The Trial Court needs to be presented with a request to set aside the plea for lack of voluntariness before we entertain the issue on the merits (for the first time).

Here, the Trial Court conducted a competency hearing on the record and ruled that Baggett was competent. It later conducted a plea colloquy hearing on the record explaining to Baggett his rights and protections in detail. There has been no showing that Baggett did not understand his constitutional protections, intelligent admissions of guilt, or effective waiver. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13, 96 S. Ct. 2253, 2257 n.13, 49 L. Ed. 2d 108 (1976). The majority notes that the Trial Court's language was simply used and easy to

understand. The guilty plea forms that Baggett signed, and that his attorney – who advised him to enter the plea – certified, explicitly specified that he was knowingly, voluntarily, and intelligently waiving his right to appeal and the right not to testify against himself. "[A]s long as a defendant has a full understanding of what the plea connotes and its consequences, it is valid." *Grigsby v. Commonwealth*, 302 S.W.3d 52, 56 (Ky. 2010) (internal quotation marks and citations omitted).

Only now does Baggett claim that the Trial Court should have asked him about whether he had taken his prescribed medications. And only now does Baggett assert that he did not know that he was waiving his right against self-incrimination. And only now does Baggett allege that he was unaware that he was declining his right to appeal.

First, as mentioned above, Baggett is not directly challenging on appeal the Trial Court's finding of competence; and he did not challenge it below after the hearing. Thus, if he is asserting that the medication, or lack thereof, rendered him incompetent, he was required to assert that claim before the Trial Court that found him competent.

Second, of course, Baggett's claims about his new-found ignorance of his rights are belied by both the *Boykin* colloquy on the record and the guilty plea forms that he and his counsel signed explicitly waiving both the right to appeal and

to refrain from incriminating himself, as well as other rights. The majority acknowledges that the Trial Court offered several clarifications and rephrased. But even if those claims appeared to have merit, they should be put forth before the Trial Court before bringing them here. And we, as an appellate body, should not be adjudicating them on the merits for the first time. The majority notes that Baggett appeared to be making jokes during the colloquy and appeared to suffer less agitation during the hearings regarding competence and pleading guilty. Only the Trial Court, who had the ability to judge his demeanor contemporaneously, should be making those determinations, and not us. "As is usually the case, the trial court was in the best position to observe Appellant's conduct and demeanor from the outset of the proceedings, and to evaluate the circumstances, including Appellant's demeanor and deportment . . . . Therefore, its evaluation of the significance of Appellant's manifestation of disorientation and memory loss is entitled to substantial deference." *Woolfolk v. Commonwealth*, 339 S.W.3d 411, 423 (Ky. 2011).

Finally, I believe that the majority's holding will lead to a surge in manipulation. If defendants can plead guilty, not move to withdraw their pleas at the Trial Court level, and then successfully attack the voluntariness of their pleas on appeal, the plea process would become meaningless. The required colloquy painstakingly analyzes all of the elements of a voluntary plea. That process was

meant to be thorough and to forestall purely strategic appeals from happening. Otherwise, defendants who intended to plead guilty could request a competency hearing first, plead, and then appeal the voluntariness of the plea. I do not think that we should open the door to that level of gamesmanship.

For all of these reasons, I would hold that Baggett waived his right to appeal on the grounds of the voluntariness of his plea under the circumstances of this case. To be reviewable on appeal, he was required to preserve any error. He declined. That failure is fatal to this appeal.

BRIEFS FOR APPELLANT:

Sarah D. Dailey
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jeffrey A. Cross
Assistant Solicitor General
Frankfort, Kentucky